This case is Case Number 4-16-0694, Active Network v. Department of CMS, et al. Appearing for the appellant is Attorney Denninger and for the appellee is Attorney Wantley. Good afternoon. Mr. Denninger, are you ready to proceed? May it please the Court. Justices, like many cases, this case is about one thing, fundamental fairness. Specifically, this case is about the right to bid for public work in a way that is fundamentally fair. This is not a new right. In fact, it has been recognized in the state of Illinois since 2002. And while this right is one that may prove inconvenient for a state actor that chooses to operate with impunity, it is nonetheless necessary to ensure that public funds are expended in a just and efficient way. The state's position on this right can be summed up in a statement from page 38 of its brief as the state is entitled to determine what goods and services it requires and how best to obtain them. Adherence to this assertion helps to explain, but in no way excuses, the state's advocation of its duty to maintain the integrity and public trust of state government in this case. As is explained in the complaint that gave rise to this case, the state published an RFP, that's a request for proposal, for an enterprise solution that offered two things to the eventual awardee. The first was the right to create a single online portal for all licenses issued by the state of Illinois, and the second was the right to engage in private negotiations directly with the state to mutually determine the scope of follow-on work. The state further decided to use rate cards as a method of price determination when evaluating bidders. Counsel, your client did not bid for this work, right? That's correct, Justice. How, if at all, does that impact your standing or your argument here? Justice, the basis for our standing is essentially the right to a fair bidding process. We maintain that the bidding process begins at RFP posting, that initial posting on the print bulletin, and the process does not conclude until the contract is executed. During that process, we maintain our status as a potential bidder, and we were deprived of our opportunity to have a fair opportunity to bid on this, given the terms of the solicitation that was posted. Then who would not have standing in this case? Well, I mean, it seems like a very broad description of who would have standing, those that could potentially bid. I understand your position, Justice. However, I think that given the fact that this, I'm not suggesting that this be created as a judicially created right, but however, RA Outdoors, previously active, was in a unique position as a potential bidder, who does this kind of work and who bids on this kind of work, to submit a bid for this kind of work and would have but for the solicitation that was posted that would have essentially placed any potential bidder in legal jeopardy had they submitted a bid. So that's our position there, that it doesn't make sense to require someone to submit a bid just to maintain a legal right that they can then assert later if submitting that bid opens that bidder up to legal jeopardy. So with that, I'll continue. Specifically, absent any legal or statutory authority, going back to the previous point, a state procurement official cannot decide on his or her own how a particular procurement should be administered. Noting these glaring illegalities and improper use of the Illinois Procurement Code, RA Outdoors filed protests that were denied, requests for review that were not heeded, and ultimately a civil complaint that was dismissed. RA's arguments throughout these pleadings were the same. The state's actions deprived it of a legally cognizable interest, that of a fair bidding process, as we just discussed, and that declaratory judgment was proper to ensure the state did not inflict a direct injury to that legally recognized right. Nonetheless, the state has held steadfast that no such right exists, in spite of the case law and statutory guidance that we've cited to the contrary. Accordingly, we are now seeking that this Court either reverse and remand this case to the Circuit Court in its entirety, or to remand with instructions to incorporate the right to a fair bidding process created in Keefe Shea into its analysis, which we believe would yield a finding that RA Outdoors had standing to pursue this action, to your point, Justice Holder-White, and that this case should proceed. So the remainder of my remarks are focused on really two primary categories. First, to discuss the effects of this solicitation, to demonstrate its unfairness, and the second, to address some of the specific allegations contained in the state's brief. On this first point, what this solicitation calls for is private negotiation of price between the state and its preferred vendor after contract execution. These are not attributes of a public procurement. Public procurement has as its goal the efficient expenditure of public funds, and only competition through competitive bidding ensures this efficiency. By contrast, what this solicitation calls for is literally a backroom deal struck by the state and the vendor at some point in the future on an unknown scope of work that will be mutually determined during those same negotiations. The state argues this is a benefit. In its brief where it presumes the state will assign a knowledgeable administrator or negotiator to engage directly with the representative from the selected vendor to create a statement of work that is at times called a master contract that is not intended to and will not be put out to bid. It should not be lost on this court that the various agencies of the state of Illinois have not had a spotless history when it comes to spending tax dollars without any oversight. Arguably, this is the reason for the Procurement Code in the first place, and the state's We Have a Guide for That approach here doesn't assuage any concerns, nor does it satisfy any legal standard. Simply, the Procurement Code does not allow vendors to negotiate the number of hours to perform a task after the award and execution of a contract. This is exactly why courts have determined and consistently upheld the rule that private negotiation of price after contract award constitutes a material change to a public procurement and is therefore a forbidden practice. Also troubling here is the state's insistence, as I alluded to earlier, that actions are permitted, as what they are calling for is akin to an order against master contract. On this point, I might hope to discuss some of the different types of procurements that the state engages in on a regular basis. Among the options available are RFP or competitive sealed proposals, which is the type that was chosen in this case. There is also order against master, as I just mentioned, contract for professional services, contract for litigation services, multi-step sealed bidding, negotiation, the list goes on. But each of these types of procurements is unique and is tailored to address a specific need that the state has identified and is clearly defined in the procurement code. While the RFP process is the most common, for unique procurements, another may prove more applicable. For example, a multi-step sealed bid allows for a state actor to first call for technical solutions via an invitation for bid and then invite the highest rated responders to submit their pricing offers. This is particularly useful for technical projects that may prompt differences in response to bids. Or should the state decide it has a need to procure professional or artistic services in the form of accountants, lawyers, musicians, or artists, it can publish a solicitation that calls for the ranking of technical proposals and allows negotiation with a top rated proposer to a fair price before award and execution. All of these types of procurements where the state seeks to select a specific vendor to perform a specific service for a specific term and for a specific price. The method of source selection to be used is designated, as I alluded to earlier, by the state's procurement officer and published in the procurement bulletin. That's how this whole process starts. By contrast, an order against master contract, which this procurement has been likened to in CPO documents and in the state's brief, is employed where the state wants to contract with a catalog to order from that catalog, to order pencils, desks, where it has an identified need, but it doesn't know how many of a specific item it will need over the life of the contract. That's not the case here. This is a specific item that they're looking to procure. And there is no subsection in the procurement code that allows the state to incorporate aspects of other types of procurements. Nor is there a catch-all that allows for the merger of these types of contracts on a whim, merely because it's convenient or novel to do so. The absence of this authority is significant. As the ability of a state agency to procure goods and services is not inherent, it is derived directly from and only from the Illinois procurement code. Thus, if no authority to perform a given action can be found in the procurement code or in the statutes, there is no authority to perform that action. So this brings us to the next fatal flaw in the solicitation, and that's the use of rate cards. While federal procurement allows for the use of rate cards in a situation where a number of vendors are selected to perform jobs and work orders are submitted based on a need at a later date, there is no basis anywhere in the procurement code or in the entirety of Illinois case law that allows for the use of rate cards in a procurement for general services. On this point, the state has consistently argued in its responses to ARIA's protests and now in its brief that no authority is necessary to employ rate cards as a method of price selection. And on this point, the state is simply wrong. As was explained in our memorandum filed with the Circuit Court and our brief filed with this Court and reiterated here, the procurement code is prescriptive, not proscriptive. It specifically provides for the ways that a state actor can use public funds to purchase goods and services and an omission of a method of source selection or price evaluation is not an oversight, nor does it impliedly allow its use. To the contrary, the procurement code does not specifically allow something. It cannot be done legally. These two aspects, the negotiation after award and rate card, are so inextricably twined and intertwined with the procurement that if you try to excise them and only leave the legal parts, there's nothing left. And what is left, what the majority of this procurement is actually about, are the follow-on statements of work. Not just the initial statement of work for the portal that was in the invitation for bid and that was already awarded and was already contracted to. It's all of the follow-on statements of work for all of the agencies that will have to develop their solutions. To offer licenses online in accordance with that portal. So this leads me to the second part of my remarks, which is focusing on specific arguments in the case brief. First, again, to go back to your point, Justice Holder White, about standing. In this case, standing is again conferred upon RA Outdoors by virtue of a state actor's well-documented plan to engage in conduct that would infringe on its legally cognizable right to a fair bidding process. The state demures, alleging that no standing is afforded to RA or any other potential bidder on account of Amtec versus the Illinois State Tollway. That was decided before the courts recognized a right to a fair bidding process. In Amtec, the court denied the relief that the plaintiff sought because the plaintiff failed to demonstrate a distinct and palpable injury in fact to any legally cognizable interest because, again, at the time, a right to a fair bidding process was not a legally cognizable interest. Subsequent cases have clarified this issue. Eight years after Amtec, Illinois courts first recognized the right to a fair bidding process as necessary to ensure a fair chance to be awarded a contract. And that was in key shape. Given the facts present here, that responding to the solicitation document as written would place a bidder in legal jeopardy, it can hardly be said that RA or any other potential bidder or any actual bidder was afforded a fair chance to be awarded this contract. This fact is doubly true when we go back to the second right afforded to the contract awardee, the right to mutually determine future statements of work, future as yet undefined public work for which no bids will be solicited. And had this right been recognized at the time that Amtec was decided, I truly believe that the court there would have recognized that, would have granted the relief sought. Building upon its establishment of standing, RA clearly stated a claim of how much relief would be granted, that being the abrogation and violation of a legally cognizable right. Further, the contention that declaratory judgment is improper here is entirely undone. By the well-centered standard, the declaratory judgment is proper where a plaintiff is seeking a resolution on a dispositive issue regarding a legal right. Here, RA authorities clearly asserted its legal right to a fair bidding process and a decision thereon is plainly dispositive. Based on this, we reiterate our prayer that this court either reverse and remand this case to the circuit court in its entirety or to remand with instructions to incorporate the right to a fair bidding process created in Chief Shea into its analysis, which we believe would yield a finding that RA Outdoors has standing to pursue this action and that this case should proceed to the merits. I yield the rest of my time to any questions that Justice may have. That's it. Thank you, Mr. Bennifer. Ms. Walker, response?  There was a lot of maligning of the RFP, talking about this operating with impunity and being a backroom deal and so on. And that's an extreme misrepresentation. This was an extremely well-vetted, well-considered process for the purpose of efficiency and streamlining costs and bringing value to the state and its citizens. But this case was decided for procedural reasons. And therefore, I think it's appropriate to focus on those procedural reasons and start there. The circuit court found that the plaintiffs lacked standing here. And that was a correct determination because the plaintiffs did not submit a proposal in response to the RFP. And therefore, their injury is just a generalized grievance. It's not different from the public generally. This is decided by the Amtec case, as the circuit court had noted, because in that case, a vendor who did not bid on RFP was found to have lacked standing to contend that it was deprived of an opportunity to participate in a fair bidding process. That was the contention that the vendor made in Amtec. So it's the same contention here. We didn't get a chance to participate in this fair process. And the result there, as the court determined, was that you needed to submit a bid. The plaintiffs suggest that the subsequent decision of Keith Shea casts doubt on Amtec. But that's not the case at all. What they're really seeking is a market expansion of standing to non-bidders. And there's nothing in Keith Shea that supports that. Keith Shea is actually quite to the contrary. First of all, Keith Shea doesn't discuss standing in any way. It's not a case about standing. And it's a case where the plaintiff was an unsuccessful bidder. And they claimed that they should have been awarded a municipal sewer contract. And the court found they were entitled to a preliminary injunction to prevent the city from proceeding at that time with a successful bidder. So the case involved a disappointed bidder. And the cases that it cites all involve disappointed bidders. And when the case talks about the right to a fair bidding process, it's talking about it for the purposes of ensuring that bidder has a chance to be awarded the contract. So it's your position that basically a prerequisite is that you actually bid. And that case didn't change that. In most situations, yes, that's going to be the case. And I think it's worth looking at the allegations of their complaint, too. The allegations of their complaint are that they claimed an interest in having multimillion dollar contracts competitively bid so that public funds are expended judiciously. That's a generalized interest. That's an abstract interest in wanting to see the law followed. They're now suggesting, well, we might have submitted a bid, we would have submitted a bid, except that there were these problems. Because that is nowhere in anything that they have alleged. So they cannot now cast themselves as a potential bidder. And at the end of the day, that would not be enough to create standing because what they have is a generalized grievance that's not distinct from the public generally that would essentially allow anyone to have standing. They're claiming that there was problems in this process, but the process they want would not benefit them in some legally cognizable way. So there's nothing that supports this market expansion of standing that they seek. And that is one of the problems. I think that that problem dovetails with another problem in bringing a declaratory judgment action that there's a defect here that demonstrates that declaratory judgment action is properly dismissed. And the issue there is that they brought a declaratory judgment action, but what they're really doing here is seeking judicial review of the chief procurement officer's administrative decision. Their complaint is all about how the administrative decision is arbitrary, capricious, and abuse of discretion and so on. And here, the code doesn't expressly adopt the administrative review law. But another method for obtaining administrative review is a writ of certiorari. And the law is very well settled that when it is possible to obtain administrative review either under the administrative review law or by certiorari, the circuit court lacks authority to consider any other types of actions. You can't bring a declaratory judgment action if you are able to proceed through a writ of certiorari. And they are very clear that they are not proceeding by writ of certiorari. They make it very clear that they are bringing a declaratory judgment action, which they cannot do here. And so that is another reason that the action is properly dismissed. They say in their reply brief, RA Outdoors is pursuing a declaratory judgment to determine if a reviewing official's determination, meaning the CPO's decision, is correct. That is seeking administrative review. They can't do that through the means that they have chosen. And those two issues sort of reinforce each other and show that they just can't proceed with a declaratory judgment action here. Another problem with a declaratory judgment action is really looking at past conduct. The past conduct is the CPO's decision. They are trying to get review of the CPO's decision. So that kind of ties in with any way you look at it. A declaratory judgment action was not available to them here for multiple procedural reasons. They've tried to draw in the merits and suggested that there's problems with this RFP and the RFP is not fair. As I said, this was a very well-considered process for an enterprise solution. It was competitively bid. Seven vendors submitted responses and the state evaluated them and eventually selected a vendor. All of those vendors were on equal footing. They all had to make commitments of the same nature. There's nothing unfair about the process. And there's nothing in the procurement code or regulations to the procurement code that are violated here. There's no problem with any provision of the code or regulations. So they're styling this as a violation of the procurement code when they can't point to a single statute or regulation that was reportedly violated because there is none. This was an acceptable means of proceeding in order to meet a state need. And indeed, a cost-effective and efficient way of meeting a state need as was determined after much vetting and consideration. They raise an idea here that there's some type of improper private negotiations of price that, again, that's a misdescription. There's nothing in the code or the regulations that wasn't followed here. They're drawing in a decision called Smith and they're taking it very much out of context. It's not a case that helps them state a claim here or show any problems or unfairness in the RFP. At the end of the day, what they're saying is that in an RFP, you simply can't have a – now remember, most of the RFP was for this core foundational work, for the enterprise solution. But they're saying you can't have a component that is based on a competitively bid hourly rate. If the ultimate quantity of hours is not yet known and going to be determined. And again, there's nothing in the code that would preclude that or the regulations. And that makes no sense as a matter of responsible procurement. As I said, they try to extrapolate from this case called Smith, which involves a very different situation than anything that is the case here. It is a situation where the RFP itself had almost no description of the project was to build a building. And it doesn't involve – it doesn't have anything to do with establishing an hourly rate of pricing for a quantity of services that is not yet entirely known. It's just not part of Smith. The problems in Smith that the court really focused on were those few requirements in the RFP. The successful bidder was later allowed in a contract to just dispense with them. And the bid was not really binding because even though the bidder had put a price in its bid, it was later able to say, well, I don't want that price to put in my bid. I'm changing my contract price here. These competitively bid rates are the rates. The rates are not changing. So they're trying to use Smith to make this apples and oranges comparison. And it doesn't help them show that there is any legal defect in the RFP at the end of the day. So there's no claim because there's no violation of any code provision or any regulations. And there is no conflict with any judicial authority. In fact, the regulations expressly incorporate these concepts of an indefinite quantity of services or payment by hours for hours worked at an hourly rate. And you constantly suggested that, well, you can't really have that in an RFP. But that's not the case. There's no reason why that is so. There's nothing about the RFP that conflicted with competitive bidding principles. This was a competitively bid solicitation. They've also suggested that rate cards were somehow impermissible, the rate cards being the table of hourly rates that the offeror was committing to. And they say, well, that's so because the code doesn't expressly state, doesn't expressly refer to hourly rates. But the code, like enabling statutes generally, the code is a general framework. It can't reasonably be expected to address every particular of every type of procurement. It's well recognized that statutes of this nature provide a general framework, and then it is left to agencies, in this case the chief procurement officer, to determine what are the appropriate details. They have wide latitude in filling in the details. To the extent that the code tells us anything about this, it says, any type of contract that promotes the best interests of the state can be used. So particularly because these concepts of indefinite quantity of services or fixed hourly rates are in the code anyway, that is essentially the concept of a rate card. The idea that the code had to expressly state that, and by not stating it, it's some type of silent prohibition, lacks any merit. And once again, that would not make any sense from a sensible, responsible procurement standpoint. So there is no merit to the contention that that is a problem with the RFP. So I think at the end of the day, you have a well-thought-out solicitation that utilized competitive bidding and that was perfectly consistent with all the legal requirements and any judicial authority that might touch on the area of competitive bidding. It actually just occurs to me that Smith, it doesn't even involve the procurement code. It involves a different statute with different regulations, which is just another reason why they're kind of making this apples to oranges comparison. So we believe that there is no claim to go forward with at the end of the day. But we don't even get there because of the procedural obstacles here, the lack of standing, the lack of a distinctive palpable injury since they did not seek to participate in this process, and the fact that they are proceeding by means of a declaratory judgment action, which they cannot do here since they are seeking review of the Chief Procurement Officer's administrative decision. With that, I will conclude and ask that the judgment be affirmed unless the Court has any questions. All right. Thank you, Ms. Wander. Mr. Benninger, rebuttal argument. Thank you, Justice. Justices, if I could just touch on a couple of points that were just brought up. First off, this allegation that we didn't cast ourselves as potential bidders who were seeking the right to a fair bidding process is undone by paragraph 39 of our complaint where we specifically request and delineate that we are, in fact, seeking a fair bidding process. That is incorporated into our second count as well as seeking declaratory judgment, looking to set aside this contract and contract award because it infringes on our right to a fair bidding process. Second, the reply brief just mentioned says that we were seeking administrative review of a CPO's decision and let me see if I can pull up the exact section. But then the second sentence says that because it infringes upon a legally cognizable right. So that's why we're seeking administrative review. We're not even seeking administrative review. We're seeking that this action be enjoined, that this decision be enjoined, that the actions based on that decision be enjoined because they would infringe upon our legally cognizable right. Again, the argument that declaratory judgment does not concern past conduct is not applicable here because for all intents and purposes, this bidding process could be argued to still be in the process stage as regards the other statements of work. Statement of work 2 through N had not been drafted, devised, priced, determined. None of that work has been done yet. The only aspect of this contract that's been worked on at all is statement of work 1, which is the portal. The portal that can be likened to essentially building a door to a house, maybe a foyer to a house, and then giving the contractor the ability to price out the remainder of the building to determine how many bathrooms, how many bedrooms, how many floors, what kind of finishes, all the rest of it, and then you just give them your checkbook and say, give me a price. You just fill that out yourself because that's essentially what the state is doing here. They're saying, okay, well, we'll bid this first part and the rest of it we'll negotiate with you to determine. Well, negotiate is specifically prohibited in public contracts for a good reason. One, because it's its own style of source selection as identified in the public procurement code, in the Illinois Procurement Code, and two, because case law says so. Leo Mishuda says so. Multiple cases have said so. Now, the fact that this price will change is borne out by the statements of the state actors in this case who have said over and again that they have negotiated a rate card and they have determined an hourly rate. That's it, period, full stop. They haven't determined the hours. You don't get to price without determining both rate and hours. Price is a function of the two, and unless you put those two together, you don't get to a full price. Going back to standing and Smith, we do believe Smith is very, very applicable here because it concerns, essentially, a project that was too complex for the government entity to determine, and so they decided to turn it over to the vendor to figure out the rest of it and then to give a price when they were done. Now, also in Smith, as it relates to standing, there, standing was essentially inferred because the action of a government contractor or government actor would have affected an industry participant. Those interests were going to be directly affected by the impending action the same way that our interests, as a potential bidder, would be directly affected by the actions that have been stated that will be forthcoming if this court doesn't do something to stop it or if this court doesn't send it back to the circuit court to do something to stop it. So for those reasons, we urge you to stop all of this abrogation of the procurement code, this violation of the rights of fair bidding process, and we would urge you to, again, refer this back to the trial court where it can be either remanded entirely or where it can be remanded with instructions to specifically incorporate the right to a fair bidding process. All right. Thank you both. The case will be taken under advisement and a written decision shall issue.